Hat, Judge,
delivered the opinion of the court:
The essential facts of this case are these: On August 9, 1918, the United States entered into a contract with the plaintiff for the manufacture and sale to the United States of 396,779 feet of Cordeau-Bickford fuse, and subsequently by letter of September 9, 1918, the United States advised the plaintiff that it would require 550,000 feet of said fuse. One of the constituent parts of such Cordeau-Bickford fuse is trinitrotoluol, commonly known as T. N. T. The T. N. T. to' be used in the manufacture of said fuse was under the terms of the contract to be furnished by the United States and was to be T. N. T. of the best quality made by the dn Pont Company at its Barksdale, Wis., plant.
The United States was delayed in securing from the du Pont Co. and furnishing the plaintiff the T. N. T. to be used in the performance of the contract. The United States, through its War Department, and subsequent to the execution of the contract, requested the plaintiff to use its own ’T. N. T. then on hand and previously purchased by the plaintiff for use in its commercial trade. The plaintiff agreed to furnish the said T. N. T. for use in the performance of its contract with the Government if the United States would agree, on its part, to later furnish to the plain *399 tiff the same quantity and, quality of T. N. T. which the plaintiff should use in performing its contract with the Government. To this the United States agreed. In pursuance of this agreement the plaintiff out of its own stock used in performing this contract with the Government 7,526 pounds of best quality T. N. T. then owned by it.
There were two process for refinement of T. N. T.: One the carbon tetra chloride process, the other the cellite process. The T. N. T. bought and used by the plaintiff in filling the Government contract was T. N. T. refined by the carbon tetra chloride process by the du Pont Company at its Barks-dale plant.
Later the United States shipped to the Army inspector of ordnance at the plant of the plaintiff two lots of T. N. T., one lot of 25,236 pounds, grade 2, and not of the best quality. The other lot was of 9,800 pounds of T. N. T., grade 1 and was of the best quality. These two shipments aggregating 35,126 pounds were stored separately from the plaintiff’s stock in a separate magazine.
In making these shipments the United States furnished to the plaintiff a quantity of T. N. T., quality in excess of its requirements, and in so doing the United States did not differentiate in the quality of the T. N. T. The plaintiff was in entire ignorance of the difference in grade, the United States having informed the plaintiff on August 30, 1-918, that the T. N. T. so shipped was made by the du Pont Company at its Barksdale plant, and was of the same quality of T. N. T. which the plaintiff had furnished the Government. To replace the quantity of T. N. T. furnished by the plaintiff 7,526 pounds were withdrawn by the plaintiff out.of these shipments and used by it in the manufacture of fuse for its commercial trade. In using the said T. N. T. so furnished plaintiff by the United States the plaintiff had no knowledge that it was not the best quality of T. N. T. and had no way of acquiring knowledge to that effect. The defect in the T. N. T. was a latent defect and could not be detected until it had aged.
In April, 1919, as a result of complaints frtim customers of the plaintiff it was discovered that the T. N. T. thus supplied by the United States to replace the T. N. T. furnished *400 the United States by the plaintiff was defective, and caused deterioration in the quality of the fuse, and the fuse manufactured with the T. N. T. supplied by the United States became insensitive with age and failed to detonate properly. The fuse manufactured from this T. N. T. furnished by the United States was and is of no value whatever. The plaintiff manufactured and has on hand 293,579 feet of Cordeau fuse made with the T. N. T. so furnished by the Government.
Its claim is for $686.91, the cost of T. N. T., and $5,349.01 labor and materials other than T. N. T. expended in manufacturing 293,579 feet of fuse; in all, $6,601.29. (See Finding XXV.) There is to be deducted from this amount $300 salvage value of lead, and $1,824.12, the agreed price for 10,134 pounds of T. N. T. bought by plaintiff from the United States.
It is well settled that the principles which govern inquiries as to the conduct of individuals, in respect to their contracts, are equally applicable when the United States is a party. (United States v. Smith, 94 U. S. 214-217; Smoot's case, 15 Wall. 36.)
The contract which we are considering is valid and binding on the United States as well a.s upon the plaintiff. If there has been a breach upon the part of the United States the United States is liable in damages for the breach on the same principles and to the same extent as a private party, for which a suitable remedy is provided by law in the jurisdiction conferred upon this court. (Chicago and Northwestern By. Co. v. United States, 104 U. S. 680-685.)
There can be no doubt from the facts found that the United States breached its contract with the plaintiff by their failure to replace the quality of T. N. T. which they had agreed to do, and as a consequence of this the plaintiff has suffered damage. In order for the plaintiff to recover its damages must be the direct and proximate result of the injury complained of, and must be proven with certainty.
The damages complained of in this case resulted directly from the action of the United States’in failing to supply *401 the quality of T. N. T. which it had agreed to supply. The T. N. T. so supplied by the United States was of no value to the plaintiff, and its agreed price of $689.91 was a loss which the plaintiff can recover.
The labor and other materials expended in the manufacture of the fuse manufactured from the T. N. T. furnished by the United States was lost because of the failure of the United States to comply with their contract. Because of the latent defect in the T. N. T. the plaintiff could not know when it manufactured the fuse that it would be a total loss; and having the right to rely upon the agreement that the T. N. T. furnished by the United States wa.s to be of the best quality, the plaintiff incurred the loss as a direct result of the failure of the United States to keep its agreement. The losses so incurred by the plaintiff flowed from the defects of the T. N. T. furnished by the United States, and strict justice demands that the damages so resulting from the breach of the contract by the United States 'must be paid by them.
A judgment will be entered for the plaintiff.
It is so ordered.
Booth, Judge, and Downey, Judge, concur.